UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CHARTER OAK FIRE
INSURANCE CO.,

                            Plaintiff,


              -v-


ALLIED WORLD NATIONAL
ASSURANCE CO.,

                            Defendant.


21-CV-4219 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

       Plaintiff the Charter Oak Fire Insurance Company ("Travelers") brings this action against

Defendant Allied World National Assurance Company ("Allied"), seeking a declaratory

judgment that Allied is obligated to defend and indemnify the defendants in an underlying state

court tort action.  Before the Court are the parties' respective motions for summary judgment;

Travelers seeks summary judgment declaring that Allied is obligated to defend and indemnify

the tort defendants in the underlying action and to reimburse Travelers for the expenses it has

already incurred in their defense; Allied seeks summary judgment declaring that Allied does not

have this obligation.  For the reasons that follow, the parties' cross-motions are granted in part

and denied in part.

1

I.      **Background**[1]

A.      **Underlying Action**

This case is about which insurer bears the primary obligation to defend and indemnify the

defendants in an underlying state court action.  In that action, plaintiff Leonel A. Centeno sues

Second Brook Properties LLC ("Second Brook"), Stickley Audi & Co, d/b/a Stickley IC-DISC,

Inc ("Stickley Audi"), Stickley Furniture Co. ("Stickley Furniture"), and L & JG Stickley, Inc.

("Stickley") (collectively, the "Tort Defendants") for bodily injury sustained when Centeno fell

from a ladder while working on a project at Stickley Furniture Store.  Second Brook owns the

real estate, including the building and land at the site.  Stickley Audi is the "doing business as"

("d/b/a") designation under which L & JG Stickley operates.  Stickley Furniture is a nonexistent

entity.  (Pls. SOF at ¶¶ 28 – 29.)

Specifically, Centeno alleges in that action that the Tort Defendants caused his injuries

by:

> failing to provide Plaintiff with a safe place to work; in failing to provide or erect
> for the Plaintiff proper scaffolding, ladders, safety devices, safety nets, lifelines,
> ropes, safety railings or other fall protection safety devices that were so placed,
> erected and operated as to afford proper protection to the Plaintiff on the site; in
> failing and/or refusing to be cognizant that proper fall protection devises and other
> elevated safety devices were provided to the Plaintiff, a construction worker
> exposed to the effects of gravity and the risks of falling from elevated work
> platforms while performing construction, rehabilitation, renovation and alteration
> upon the said site; in failing to perform proper and routine inspections of the
> elevated work surfaces and safety railings, used upon the job site to ensure that
> the same were properly constructed maintained; in failing to inspect the safety
> devices and safety conditions upon the job site; in failing to have a safety plan for
> the job site; in failing to prevent the Plaintiff from falling form the ladder upon
> which he was working when said safety devices failed or were not provided; in
> failing to perform inspections of safety devices and safety railings located upon

---

[1] These facts are drawn from the parties' respective statements of undisputed facts and
responses, which are at ECF No. 25 ("Pl.'s SOF"), ECF No. 33 ("Pl.'s SOF Rep."), ECF No. 38
("Def.'s SOF"), and ECF No. 35 ("Def.'s SOF Rep."), unless otherwise noted.

the roof in use by the Plaintiff; in failing to provide Plaintiff with proper safety
equipment; in failing to provide the Plaintiff with proper fall protection…

(Pl.'s SOF at ¶ 22.).

When Centeno fell, he was working as an employee for Cooper Works Inc. ("Cooper"),
which Stickley had contracted to perform work on their property.  Third-party claims have been
asserted against Cooper in the underlying action for contractual indemnity, breach of contract for
failing to provide insurance, common law indemnity, and contribution.  (Pl.'s SOF at ¶¶ 1 – 21;
*see also* ECF No. 26-22.)  Travelers, the Tort Defendants' insurer, issued several tender letters to
Allied, Cooper's insurer, requesting that Allied take up the defense and indemnification of the
Tort Defendants.  Allied refused.  (Pl.'s SOF at ¶¶ 24 – 27.)

   B.   **Insurance Policies**

      1.   **Travelers' insurance of Stickley, Stickley Audi, and Second Brook
           Properties**

Travelers issued a commercial general liability insurance policy effective from July 1,
2018 to July 1, 2019 to Stickley, which includes Second Brook and Stickley Audi as named
insureds.  (Pl.'s SOF at 1.)

This policy includes the following "Other Insurance" clause:

> If other valid and collectible insurance is available to the insured for
> a loss we cover under Coverages A or B on this Coverage Part, our
> obligations are limited as follows:
>
> b. Excess Insurance
>
> This insurance is excess over:
>
> (1) Any of the other insurance, whether primary, excess,
> contingent or on any other basis:
>
> That is available to the insured when the insured is added
> as an additional insured under any policy, including any
> umbrella or excess policy.

(Pl.'s SOF at ¶ 30.)

### 2.    Allied's insurance of Cooper

Allied issued a commercial general liability policy to Cooper effective from December 31, 2018 to December 31, 2019.

This policy includes a provision entitled "Additional Insured — Owners, Lessees or Contractors — Scheduled Person or Organization" (the "Additional Insured Endorsement") which states:

SCHEDULE

| Name of Additional Insured Person(s) Or Organization(s): | Location(s) of Covered Operations |
|---|---|
| As required by written contract executed prior to the date of an occurrence. | As required by written contract executed prior to the date of an occurrence. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

> a. Section II – Who Is An Insured is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> b. Your acts or omissions; or
>
> c. The acts or omissions of those acting on your behalf;
>
> In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above…"

(Def.'s SOF at ¶ 52.)

The policy Allied issued to Cooper also states in a clause titled "Primary and Noncontributory — other Insurance Condition" that:

> The following is added to the Other Insurance Condition and supersedes any provision to the contrary:
>
> Primary and Noncontributory Insurance

> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:
>
> (1) the additional insured is a Named Insured under such other insurance; and
>
> (2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

(Pl's SOF at ¶ 4).

### C.     Contracts between Cooper and Stickley Audi

### 1.     The 2015 Contract

Stickley and Cooper entered into the first relevant agreement ("Insurance Agreement") on June 15, 2015, in connection with construction work to be performed at Stickley Furniture Store, located at 50 Tarrytown Road, White Plains, NY.  In relevant part, this agreement states as follows:

> We are contracted to perform (GC services) work on the premises of L. & J.G. Stickley, Inc. (Stickley Furniture).  In this regard, we provide and shall maintain at our expense for the benefit of Stickley a current **certificate of insurance** indicating liability, vehicle, and worker's compensation coverage. Stickley is named as an additional insured on the general liability policy on a "primary and non-contributory basis."
>
> To the fullest extent permitted by law, we or our assign shall indemnify and hold harmless Stickley, its agents and employees or any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of the tangible property (other than the work itself), but only to the extent caused by our negligent acts or omissions or by anyone directly or indirectly employed by us or anyone for whose acts they may be liable.  Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person.

(Pl.'s SOF at ¶ 11.)

The 2015 contract does not name a specific job or timeframe during which the agreement is valid, and there were no communications between Stickley and Cooper cancelling the agreement.  (Pl.'s SOF at ¶ 12; *see also* ECF No. 26-13 at 13-14.)

On April 11, 2019, Acord, Cooper's insurance broker, issued to Cooper a certificate of liability insurance naming L & J.G. Stickley, Inc. as an additional insured in advance of the job where Centeno was injured.

### 2.     The 2019 Contract

Cooper also entered into a contract with Stickley Audi dated April 16, 2019, to perform the specific construction job at which Centeno was injured.  This contract is in the form of an executed and slightly modified AIA Document A101-2007, the "Standard Form of Agreement Between Owner and Contractor."  It defines "Stickley Audi" as the Owner and "Cooper Works" as the "Contractor."  Cooper drafted this contract and sent it to Stickley.  (Pl.'s SOF at ¶6; *see also* ECF No. 26-13 at 9 – 10, 17.)

Under Article 10 of this contract, "Insurance and Bonds," the contract required Cooper to carry general liability insurance in an amount of not less than $6 million per occurrence.  (ECF No. 29-5 at 9.)  This Article also states that "[t]he Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201-2007."  (ECF No. 29-5 at 9.)

This contract states on the first page that "AIA Document A201-2007, General Conditions of the Contract for Construction, is adopted in this document by reference.  Do not use with other general conditions unless this document is modified."  (ECF No. 29-5 at 2.)  Lower on that page, in small print, it also states that "[a]ll references to AIA document A201-2007 shall mean updated version AIA 201-2017."  (*Id.*)

Article 11 of AIA Document A201-2007 reads, in pertinent part:

§ 11.1.4 To the fullest extent permitted by law, the Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, Lender, and all of its subsidiaries, and any other party requested by Owner as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner, Lender, and all of its subsidiaries, and any other party requested by Owner as additional insureds for claims caused in whole or in party by the Contractor's negligent acts or omissions during the Contractor's completed operations.

(Pl.'s SOF at ¶ 9.)

Article 11 of AIA Document A201-2017 reads, in pertinent part:

Article 11 INSURANCE AND BONDS § 11.1 Contractor's Insurance and Bonds § 11.1.1 The Contractor shall purchase and maintain insurance of the types and limits of liability, containing the endorsements, and subject to the terms and conditions, as described in the Agreement or elsewhere in the Contract Documents. The Contractor shall purchase and maintain the required insurance from an insurance company or insurance companies lawfully authorized to issue insurance in the jurisdiction where the Project is located. The Owner, Architect, and Architect's consultants shall be named as additional insureds under the Contractor's commercial general liability policy or as otherwise described in the Contract Documents.

(ECF No. 48 at 2.)

Originally, the parties briefed this matter as though it incorporated the A201-2007 document and did not address the language substituting references to A201-2017. The parties provided supplemental briefing on the A201-2017 language at the Court's request. (*See* ECF Nos. 46 – 48.)

## II.    Legal Standard

Summary judgment under Rule 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering

the record as a whole, a rational jury could find in favor of the non-moving party.  *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted) (second quoting *Lunds, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)).  In cases involving cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017) (citation omitted).

Summary judgment on the meaning of an insurance policy is appropriate when the terms of a policy are unambiguous. *Seiden Assocs., Inc. v. ANC Holdings, Inc*., 959 F.2d 425, 428 (2d Cir. 1992).  Policy terms are unambiguous where they provide "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Olin Corp. v. Am. Home Assurance Co.,* 704 F.3d 89, 99 (2d Cir. 2012) (citation and internal quotation marks omitted). "As a general matter, the objective of contract interpretation is to give effect to the *expressed* intentions of the parties," and "the best evidence of what parties to a written agreement intend is what they say in their writing." *L. Debenture Tr. Co. of New York v. Maverick Tube Corp.,* 595 F.3d 458, 467 (2d Cir. 2010) (internal quotation marks omitted).

### III.      Discussion

As a threshold matter, there can be no dispute that the underlying action includes allegations of "bodily injury" that were possibly caused, in whole or in part, by Cooper's acts or omissions.  "If there is either a possible factual or legal basis on which the insurer might eventually be obligated to indemnify, the insurer has a duty to defend."  *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 323 (S.D.N.Y. 2020).  Thus, Allied has an obligation to defend Cooper and those that qualify as "additional insured" under its policy with Cooper.

Therefore, the critical question in determining Allied's and Travelers' respective obligations to the Tort Defendants is determining whether they are named as "additional insured" under Allied's policy.  Under the policy Allied issued to Cooper, Allied is required to add entities as "additional insured" when "required by written contract executed prior to the date of an occurrence."  Allied contends that this requirement has not been met, while Travelers states that it has been met based on both the 2019 and 2015 contracts.

#### 1.      The 2015 Contract

First, Travelers argues that the 2015 insurance agreement between Cooper and Stickley is a written contract executed prior to the date of the occurrence — Centeno's injury — in which Cooper agrees to name Stickley as an "additional insured."   In relevant part, in that contract Cooper agrees that it will "provide and shall maintain at [its] expense for the benefit of Stickley a current certificate of insurance indicating liability, vehicle, and worker's compensation coverage" and that "Stickley is named as an additional insured on the general liability policy on a 'primary and non-contributory basis.'"

Allied contends that this contract is ambiguous and does not suffice because Cooper's owner testified in his deposition that this 2015 contract pertained only to a previous job.[2]  This argument is unpersuasive.  Under New York Law, "[t]he determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." *In re Prudential Lines Inc.*, 158 F.3d 65, 77 (2d Cir. 1998) (citation omitted); *accord L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465-66 (2d Cir. 2010) (collecting cases).  Courts may only consider evidence extrinsic to the contract — such as testimony about the intent of the contracting parties — if the contract itself is ambiguous on its face.  "If a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 642–43 (S.D.N.Y. 2016) (quoting *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993)) (collecting cases applying New York law).

On its face, the 2015 contract is unambiguously a "written contract executed prior to" the date of the occurrence.  It does not contain an expiration date nor restrictions to a specific job and states that Cooper will "provide and *maintain*" insurance covering Stickley as an additional insured on a "primary and noncontributory basis."  (emphasis added.)  To be sure, the contract is broad, but the common meaning of it is plain.  Because this contract is unambiguous, the Court gives it effect as written and does not look to the conflicting extrinsic evidence the parties provide seeking to alter its plain meaning.  *See, e.g.*, *L. Debenture Tr. Co.*, 595 at 468

---

[2] The director of facilities for Stickley, meanwhile, submitted a declaration that the 2015 agreement was part of the "ongoing work" Cooper performed for Stickley starting as far back as 2007, and continued to cover subsequent contracts.  (*See* ECF 27-2 at ¶ 6.)

("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation.") (citation marks omitted).[3]

Allied's policy, meanwhile, does not require that the "written contract executed prior to" the date of the occurrence specify the named insured, job, or timeframe, or that it be executed within a specific timeframe.  When construed according to the common meaning of the words in the contract, the 2015 agreement plainly suffices.  *See Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118, 122, 926 N.Y.S.2d 867, 950 N.E.2d 500 (2011) ("Insurance contracts must be interpreted according to common speech.").  Moreover, Allied's attempts to introduce ambiguity into this language are unavailing.  First, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing."  *L. Debenture Tr. Co.*, 595 F.3d at 468 (2d Cir. 2010) (citation omitted).   And second, where an insurance policy is ambiguous, New York law requires any ambiguity to be construed against the insurer.  *See Breed v. Ins. Co. of N. Am.,* 46 N.Y.2d 351, 353, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978); *Hartol Prods. Corp. v. Prudential Ins. Co.,* 290 N.Y. 44, 49, 47 N.E.2d 687 (1943).

The 2015 agreement, therefore, meets the requirements of Allied's policy as a matter of law.  The agreement also answers the next question, which is whether Allied's insurance is primary or excess.  Allied's insurance contract with Cooper states that "this insurance is primary and will not seek contribution from any other insurance available to an additional insured under your policy provided that (1) the additional insured is a Named Insured under such other policy,"

---

[3] Moreover, were the Court to consider extrinsic evidence, the fact that Stickley requested a certificate of insurance in April 2019, which Cooper provided, tends to show that both parties continued to abide by the terms of the 2015 agreement in 2019, and is consistent with both parties' understanding the agreement to still be in effect.

which is met, and "(2) you have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured." Cooper and Stickley expressly agreed in the 2015 agreement that Stickley is covered on a "primary and noncontributory basis."[4]

Accordingly, Stickley is named as an additional insured under Allied's insurance of Cooper on a primary and noncontributory basis, according to its agreement with Cooper and Allied's agreement with Cooper.

### 2.    The 2019 Contract

Travelers also argues that the 2019 contract is a "written contract" that suffices to name Stickley Audi as an additional insured under Allied's policy. In its briefing, Travelers bases its argument on the 2019 contract's incorporation of the A201-2007 document.

The 2019 contract does, on its face, specifically state that "[t]he Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201-2007." Article 11 of AIA Document A201-2007 requires the "Contractor," Cooper, to name the "Owner," Stickley Audi, as an "additional insured." AIA Document A201-2007 is a standard form document that is clearly identified by its specific title. Coopers' owner, however, has testified both that he drafted the 2019 contract, and also that he did not know of or intend to incorporate AIA Document A201-2007. (*See* ECF No. 26-13 at 9 – 10, 17.) Meanwhile, Stickley Audi's representative has testified that he not only saw AIA Document A201-2007, but that at the time of the 2019 contract, the relevant provisions were highlighted. (*See* ECF No. 42-1.)

---

[4] The "Other insurance" clauses of Traveler's and Allied's respective policies also state that Travelers' policy is excess, and Allied's primary, except in certain situations not relevant here.

Were that all, this would be a relatively simple matter.  New York contract law is clear: Courts first consider whether the contract is ambiguous, and consider extrinsic evidence only if necessary in light of an ambiguity.  *See, e.g.*, *Liberty Mut. Ins. Co.*, 170 F. Supp. 3d at 642–43. Here, the contract is clear, and thus the Court ought not reach the extrinsic evidence by the rules of contract construction.  Moreover, it is not necessarily a defense that Cooper's representative testified that he did not fully understand this incorporation.  "A party is under an obligation to read a document before accepting its terms and cannot avoid the effect of the document by asserting that he or she did not read or understand the contents of the document."  *Serrano v. Cablevision Sys. Corp.,* 863 F. Supp. 2d 157, 165 (E.D.N.Y. 2012) (citation omitted); *see also Torres*, 2014 WL 4802985 at *8 ("That Plaintiff claims he never saw the [Agreement] is irrelevant.").  And, even if the Court followed Allied's urging and reached the extrinsic evidence, each party tells a different story and so it does not resolve the ambiguities that Allied uses it to introduce.  Allied's attempt to muddy the clear language of the contract is therefore unavailing, as after courts fail to resolve ambiguities by evaluating the extrinsic evidence, the next step is to apply the *contra proferentem* canon, which applies ambiguities in a contract against its drafter. Here, Cooper, Allied's insured, concedes that it drafted the contract.  *See Westchester Resco v. New England Reinsurance*, 818 F.2d 2, 3 (2nd Cir. 1987) (explaining the *contra proferentem* canon, which is to be deployed only after extrinsic evidence has failed to resolve ambiguities.)

But this case is not so simple, because the 2019 contract also, on its first page, plainly substitutes AIA Document A201-2017 for "all" references to AIA Document A201-2007.  This substitution too is unambiguous — yet here, *neither* party seems to have read, understood, or relied on the incorporated terms of the substituted document, which then would be the terms of the contract.  (*See* ECF No. 48, admitting that "neither insurers or insureds appear to have relied

upon the language of AIA A201- 2017.")  As a matter of the contract's effect, both the 2007 and 2017 versions require the "Contractor," Cooper, to name the "Owner," Stickley Audi, as an "additional insured."  But as a matter of "knowledge" of the incorporation, it seems to strain the spirit, if not the text, of the rules of contract construction to hold both parties to the terms of a contract that is unambiguously incorporated, yet on which they both state they did not rely (e.g., A201-2017).  *See Mindspirit, LLC v. Evalueserve Ltd.*, 346 F.Supp.3d 552, 585 (S.D.N.Y 2018) ("for the terms of a separate [writing] to be incorporated by reference, it must be clear that the parties knew of and consented to the terms to be incorporated by reference.")  Nor does it seem satisfactory to hold the parties to the terms of A201-2007, because it was *not* in fact incorporated by the text of the contract, despite Travelers' briefing and Stickley's testimony, due to the clear substitution language.

The Court need only resolve this question, however, if there remains a question of coverage after the 2015 contract's effect.

### 3.      Coverage Provided by the 2015 Contract

Allied contends that the 2015 contract, if it provides coverage (which it does), provides coverage only for Stickley.  It also contends that the 2019 contract, if it provides coverage (which is undecided), provides coverage only for Stickley Audi.  Travelers contends that this distinction is meaningless because Stickley Audi is merely a d/b/a for Stickley and Stickley Furniture is a nonexistent entity, and therefore coverage of one is coverage of the other.

Allied has provided no evidentiary support for its contention that there is a legal distinction between Stickley and Stickley Audi, and indeed, seems to refer to Stickley Audi as merely the "d/b/a" for Stickley in its briefing.  (*See* Def.'s SOF at 33, referring to Stickley as "L&JG Stickley, Inc., d/b/a Stickley & Audi Co.")  Accordingly, the Court accepts that there is no legal difference between "Stickley" and "Stickley Audi."  *See Cusano v. Horipro*

14

*Entertainment*, 126 Fed.Appx. 521, 522 (2d Cir. 2005) (recognizing that plaintiff conceded that "there is no legal distinction between" individual and d/b/a)*; McDowell v. Security Chimneys*, 1993 WL 498208, *8 n.17 (N.D.N.Y. Nov. 29, 1993) (recognizing that a d/b/a had no legal significance in the context of the lawsuit, and therefore granting partial dismissal). Therefore, the Court concludes that the 2015 contract confers primary coverage both for Stickley and its d/b/a, Stickley Audi.

That does not mean that Allied is required to defend *all* of the Tort Defendants. Just as Allied fails to substantiate its distinction between Stickley and Stickley Audi,[5] so too Travelers fails to support its argument that Second Brook, as one of the Tort Defendants, is also covered under Allied's policy by virtue of *either* the 2015 or the 2019 contract. Therefore, the Court concludes that while Stickley — and by extension Stickley Audi and Stickley Furniture, which is a nonexistent entity — are covered under Allied's policy as named insured on a primary basis, Second Brook is not. Allied's coverage of Stickley is primary both based on the terms of Cooper's policy and because that is the unambiguous result of the respective "other insurance" clauses of the Allied and Travelers policies at issue.

Finally, Travelers seeks a declaratory judgment that Allied is required to both defend and indemnify the Tort Defendants. Allied's obligation to defend is addressed above. As to its obligation to indemnify, Travelers' request is premature until liability is determined, as Allied's policy provides coverage only for incidents "caused by" Cooper's "acts or omissions," or those of those working on Cooper's behalf. While the possibility of coverage is enough to trigger the duty to defend, it is well settled that the duty to defend is "liberally construed and is broader than

---

[5] And again, Allied at times appears to concede that the two entities are referenced interchangeably.

15

the duty to indemnify, in order to ensure an adequate defense of the insured, without regard to the insured's ultimate likelihood of prevailing on the merits of a claim." *Fieldston Property Owners Association Incorporated v. Hermitage Insurance Company*, 16 N.Y.3d 257, 264 (2011). Indemnification, by contrast, will depend on the ultimate determination of liability.  The Court declines to opine now on the basis of hypothetical outcomes.

## IV.   Conclusion

For the foregoing reasons, Travelers' motion for summary judgment is GRANTED IN PART, specifically, as to defense costs for Stickley, Stickley Audi, and Stickley Furniture, and DENIED IN PART, as to indemnification and as to coverage for Second Brook.  Likewise, Allied's cross-motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is directed to close the motions at ECF Nos. 23 and 36 and to close this case.

SO ORDERED.

Dated:  March 27, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge